**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEMETRIUS A. ECKFORD,

     Petitioner,                   Civil No. 2:10-CV-12103
                                    HONORABLE MARIANNE O. BATTANI
v.                               UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

     Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

     Demetrius A. Eckford, ("Petitioner"), presently confined at the Ojibway

Correctional Facility in Marenisco, Michigan, has filed a <u>pro se</u> petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his

conviction for felon in possession of a firearm, M.C.L.A. 750.224f; carrying a

concealed weapon, M.C.L.A. 750.227; and possession of a firearm in the

commission of a felony, second offense, M.C.L.A. 750.227b.  For the reasons

that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

     Petitioner was found guilty of the above offenses following a jury trial in the

Wayne County Circuit Court.  This Court recites verbatim the relevant facts relied

upon by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). See <u>Wagner v. Smith</u>, 581 F. 3d 410,

413 (6th Cir. 2009):

> On February 6, 2007, Detroit police officer Jason Kile and his two partners were traveling in a semi-marked vehicle, which had lights and sirens but no police markings.  Around 12:30 a.m., while in the police vehicle, Kile saw defendant standing by the door of a gas station.  The officers saw defendant for about 5 seconds as they drove by.  When they came back approximately five minutes later, defendant was still standing in the same place.  As the officers began to drive into the gas station, defendant quickly walked down the street and turned south onto another road.

> The officers followed defendant in their vehicle.  Defendant was walking in the middle of the street despite the presence of sidewalks. Defendant walked up a driveway and knocked on the side door of the house.  The officers pulled their vehicle up to the mouth of the driveway and Kile exited the vehicle.  Although Kile was not in uniform, his badge was visible hanging around his neck.  Kile identified himself as a police officer and stated that he wanted to talk to defendant.  Defendant looked at Kile, grabbed his right side, and ran through the backyard. When defendant grabbed his side, Kile pulled his weapon; he ran after defendant holding a flashlight in his left hand and his gun in his right.

> Defendant ran to the back of the yard where he threw a blue-steel semi-automatic weapon over a chain link fence into an alleyway.  He then ran approximately another five feet, stopped, and put his hands up to surrender.  Kile handcuffed defendant, left him with his partners, and climbed the fence to retrieve the weapon.

> Defendant prepared his own motion to suppress evidence of the weapon alleging an improper search and seizure.  That motion was initially heard and denied on April 27, 2007.  Although defendant's appointed counsel was present at that motion hearing, he did not represent him during any portion of the proceeding related to the motion to suppress.  On appeal, after the jury trial and conviction, this Court remanded for a new suppression hearing where counsel acted on defendant's behalf.  The motion to suppress was once again denied, and the evidentiary issue is now before this Court.

2

People v. Eckford, No. 279501, Slip. Op. at * 1-2 (Mich. Ct.App. December 18, 2008).

Petitioner's conviction was affirmed on appeal. Id., lv. den. 483 Mich. 1022; 765 N.W. 2d 336 (2009); reconsideration den. 484 Mich. 874; 769 N.W. 2d 662 (2009).

On or about May 25, 2010, petitioner filed a petition for writ of habeas corpus with this Court.  While his petition was pending in this Court, petitioner filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500, *et. Seq.,* which was denied. People v. Eckford, No. 07-5476-01 (Wayne County Circuit Court, September 29, 2010).  Petitioner never appealed the denial of this post-conviction motion to the Michigan appellate courts.  On February 3, 2011, this Court entered an opinion and order holding the petition in abeyance so that petitioner could return to the state courts to exhaust additional claims that had not yet been presented to the state courts.  The Court also administratively closed the case. See Eckford v. Burt, U.S.D.C. No. 2:10-CV-12103; 2011 WL 379416 (E.D. Mich. February 3, 2011).

Petitioner filed a second motion for relief from judgment, which was denied by the trial court on the ground that M.C.R. 6.502(G) prohibits the filing of a second or successive motion for relief from judgment in the absence of newly discovered evidence or a retroactive change in the law.  The trial court further concluded that the affidavit of James Siggers presented by petitioner in his

3

second motion for relief from judgment did not constitute newly discovered evidence because petitioner could have discovered this evidence earlier with due diligence. People v. Eckford, No. 07-5476-01 (Wayne County Circuit Court, June 7, 2011). The Michigan Court of Appeals denied petitioner's application for leave to appeal pursuant to M.C.R. 6.508(D). People v. Eckford, No. 306003 (Mich.Ct.App. December 27, 2011). The Michigan Supreme Court denied petitioner's post-conviction appeal because petitioner's second motion for relief from judgment was prohibited pursuant to M.C.R. 6.502(G). People v. Eckford, 493 Mich. 855; 820 N.W.2d 793 (2012).

On November 20, 2012, this Court reinstated the case to the Court's active docket and permitted petitioner to file an amended habeas petition. In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:

I. "If not for the officers intrusion, would the gun have been found?"

II. "Did the attorney abandon defendant Eckford at a critical stage in the proceeding?"

III. "Did the Petitioner waive his right to represent his-self (sic)?"

IV. "To obtain this State conviction, who deprived defendant of his liberty interest by violating the Fourth, Sixth, Fourteenth Amendment?"

V. Did the trial court err [in] abusing its discretion by denying defendant's constitutional rights and due process in complete failure to address all issues presented in 6.500 motion for relief from judgment.

4

VI.  Would it be a miscarriage of justice for the Court of Appeals not to address issues [of] ineffective assistance of appellate counsel, ineffective trial counsel, miscarriage of justice, equal protection, and due process violations due to defendant's newly presented evidence not presented to the jury, under the gateway showing of actual innocence claims.

VII. Failure to Investigate a defense witness, a known defense witness, and failure to present a defense.

VIII. Defendant was denied his Sixth Amendment right under the compulsory process for obtaining witnesses in his favor.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v.

5

Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. ( citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported

or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

7

### III.  Discussion

#### A. Claim # 1.  The Fourth Amendment claim.

Petitioner first contends that the firearm that was seized in this case should have been suppressed as the fruit of an unlawful search or seizure.

Petitioner is not entitled to habeas relief on his Fourth Amendment claim. A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. Stone v. Powell, 428 U.S. 465, 494-95 (1976); Machacek v. Hofbauer, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. Riley v. Gray, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims, not whether he or she in fact did so or even whether the Fourth Amendment claim was correctly decided. See Wynne v. Renico, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); rev'd on other grds 606 F.3d 867 (6th Cir. 2010).  Indeed, under Stone, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." See Brown v. Berghuis, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment

8

claim does not overcome the Stone v. Powell bar.'" Id. (quoting Gilmore v. Marks, 799 F.2d 51, 57 (3rd Cir. 1986)).  Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which Stone v. Powell makes irrelevant.'" Brown, 638 F. Supp. 2d at 812-13 (quoting Siripongs v. Calderon, 35 F. 3d 1308, 1321 (9th Cir.1994)).

In the present case, petitioner was able to raise his Fourth Amendment claim in his pre-trial motion to suppress evidence, in which he represented himself, again in his post-trial motion to suppress evidence, in which he was represented by counsel, and on his direct appeal, in which he was represented by counsel.  Although petitioner claims that Officer Kile lied about the reason for stopping petitioner, Officer Kile's alleged perjury at the suppression hearing did not deprive petitioner of a full and fair opportunity to litigate his Fourth Amendment claim. See Brown v. Berghuis, 638 F. Supp. 2d at 811.  Other cases have come to the same conclusion. See Sneed v. Smith, 670 F. 2d 1348, 1356 (4th Cir. 1982)(Stone rule "would of course be swallowed if impairment [of a full and fair opportunity to litigate] could be shown simply by showing error-whether of fact or law-in the state court proceeding.  Sneed's suggestion of perjury is merely a suggestion of factual error.").

9

Petitioner is unable to raise a Fourth Amendment claim that the evidence in this case was the product of an illegal arrest or search when he raised the factual basis for this claim in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. Machacek, 213 F. 3d at 952; Monroe v. Smith, 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001). Because petitioner was afforded opportunities to present his case regarding the validity of the search, Stone bars his Fourth Amendment claim. Brown, 638 F. Supp. 2d at 813. Accordingly, petitioner is not entitled to habeas relief on his first claim.

**B.  Claims # 2 and # 3.  The denial of counsel claim.**

Petitioner next contends that he was denied the assistance of counsel at his initial pre-trial suppression hearing when he was compelled to represent himself at his pre-trial suppression hearing and the trial court did not obtain a waiver of counsel on the record from petitioner nor advise petitioner of the dangers of self-representation. Although petitioner represented himself at his suppression hearing, he was represented by counsel at his trial. Following his trial, appellate counsel moved for a remand to the trial court to conduct a new suppression hearing, which was granted. People v. Eckford, No. 279501 (Mich.Ct.App. February 15, 2008). At the second suppression hearing, conducted on April 11, 2008, petitioner was represented by appellate counsel. After hearing testimony at the second suppression hearing, the trial court again

10

denied the motion to suppress and this was affirmed on appeal by the Michigan Court of Appeals. People v. Eckford, No. 279501 (Mich.Ct.App. December 18, 2008).

The U.S. Supreme Court has held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. United States v. Cronic, 466 U.S. 648, 659 (1984).  However, remedies for the deprivation of the Sixth Amendment right to the effective assistance of counsel should be tailored to the injury suffered from the constitutional violation but should not necessarily infringe on competing interests. See United States v. Morrison, 449 U.S. 361, 364 (1981).

In the present case, assuming that petitioner's Sixth Amendment right to counsel was violated when he was compelled to represent himself at his pre-trial suppression hearing, the Michigan Court of Appeals adequately addressed the error by ordering a new suppression hearing before the trial court in which petitioner was represented by counsel.

In Carracedo v. Artuz, 81 Fed. Appx. 741, 742-43 (2nd Cir. 2003), the Second Circuit held that the state appellate court's decision to order a new suppression hearing, rather than a new trial, when the petitioner had been denied the right to consult with counsel during an overnight recess during a suppression hearing, was not contrary to, or an unreasonable application of, clearly established federal law.  In so ruling, the Second Circuit noted that in

11

ordering the remedy of a new suppression hearing, rather than a new trial, the state appellate court correctly invoked the principle enunciated by the U.S. Supreme Court in Morrison that any remedy for a Sixth Amendment violation should be narrowly tailored to the injury suffered but not infringe on the competing interests of the state. Id. at 743. The Second Circuit further noted that a suppression hearing is a "discrete proceeding" and thus remand to the trial court for a new suppression hearing fully addressed any constitutional deprivation that the petitioner may have suffered at the hearing due to the infringement of his right to counsel at that hearing. Id. (internal quotation omitted). Moreover, although conducting a new suppression hearing after the trial is less efficacious than had the suppression hearing been conducted prior to trial, the state appellate court's ordering of a new suppression hearing, rather than a new trial, was not an unreasonable application of clearly established Supreme Court precedent. Id. at 744.

The Court is aware, as was the Second Circuit, that the Third Circuit, in a pre-AEDPA case, held that the proper remedy when a habeas petitioner was denied the assistance of counsel at a pre-trial suppression hearing was to order a new trial, not just a new suppression hearing. See Henderson v. Frank, 155 F.3d 159 (3rd Cir.1998).

The Henderson case does not afford petitioner a basis for relief for several reasons. First, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1)

12

prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. See Miller v. Straub, 299 F. 3d 570, 578-579 (6th Cir. 2002). Third Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012). The Supreme Court has yet to rule on the proper remedy for the deprivation of counsel at a pre-trial hearing. Thus, there is no clearly established Supreme Court law that would suggest that the proper remedy for the denial of counsel at a pre-trial suppression hearing should be a new trial, as opposed to a new suppression hearing.

Secondly, as noted above, the Second Circuit has held that ordering a new suppression hearing with counsel, rather than a new trial, is sufficient to remedy the denial of counsel at a pre-trial suppression hearing. A disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established for federal habeas purposes. See Miller v. Colson, 694 F. 3d 691, 698 (6th Cir. 2012); cert. den. 133 S. Ct. 2739 (2013). The Supreme Court's failure to rule on this issue, coupled with the "disagreement and confusion" among the federal courts concerning the resolution of this issue, precludes this Court from finding that the Michigan Court of Appeals' decision to order a new suppression hearing in lieu of a new trial was an unreasonable application of

13

clearly established federal law. See Worden v. McLemore, 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002).

Thirdly, Henderson  is not controlling on a case like petitioner's because it is a pre-AEDPA decision and therefore decided under a de novo standard of review, as opposed to the more deferential standard of review enunciated by the AEDPA. See e.g. Jones v. Trombley, 307 Fed. Appx. 931, 934, n. 1 (6th Cir. 2009).

Finally, as the Second Circuit noted in the Carracedo case, the majority of the Third Circuit in Henderson did not claim that Supreme Court holdings required a new trial when a habeas petitioner had been denied counsel during a pretrial suppression hearing, only that its conclusion to order a new trial did "not run counter to the teachings of the Supreme Court." Carracedo, 81 Fed. Appx. at 744 (quoting and citing Henderson, 156 F. 3d at 169, 171).

Finally, this Court notes that the dissenting judge in Henderson opined that the proper remedy for the denial of counsel at the suppression hearing should only be a new suppression hearing with the assistance of counsel and not a new trial. Henderson, 156 F. 3d at 173 (Garth, J., dissenting).

In light of the foregoing, the Michigan Court of Appeals' decision to order a new suppression hearing with the assistance of counsel as a remedy for the denial of counsel at petitioner's first suppression hearing was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

14

Petitioner is thus not entitled to habeas relief on his second and third claims.

**C.  Claims 4-8.  Petitioner's remaining claims are procedurally defaulted.**

Respondent contends that petitioner's remaining claims are procedurally defaulted because he raised them only for the first time in his second post-conviction motion for relief from judgment and both the trial court and the Michigan Supreme Court relied on M.C.R. 6.502(G) to reject petitioner's post-conviction motion.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); See also Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 860 (E.D. Mich. 2009).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of

15

innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995).

Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically file only one motion for relief from judgment with regard to a criminal conviction. See Banks v. Jackson, 149 Fed. Appx. 414, 418 (6th Cir. 2005); Mohn v. Bock, 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to People v. Ambrose, 459 Mich. 884; 587 N. W. 2d 282 (1998)).  However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. Banks, 149 Fed. Appx. at 418; Mohn, 208 F. Supp. 2d at 801; Hudson, 68 F. Supp. 2d at 800-01.

The trial court rejected petitioner's second motion for relief from judgment pursuant to M.C.R. 6.502(G), because petitioner had already filed a motion for relief from judgment and had failed to present new evidence that could not have been discovered sooner with due diligence which would entitle him to file a second motion for relief from judgment pursuant to M.C.R. 6.502(G)(2).  The Michigan Supreme Court likewise rejected petitioner's appeal because petitioner was prohibited from filing a second motion for relief from judgment pursuant to M.C.R. 6.502(G).

Petitioner's first motion for relief from judgment was filed in 2010. At the time that the petitioner filed his first motion, M.C.R. 6.502(G) was a firmly established and regularly followed procedural rule that would be sufficient to invoke the doctrine of procedural default. See Porter v. Smith, 197 F. Supp. 2d 827, 832-33 (E.D. Mich. 2002). Because petitioner's fourth through eighth claims were rejected by the Wayne County Circuit Court and the Michigan Supreme Court pursuant to Mich.Ct.R. 6.502(G), the claims are procedurally defaulted. Id.

Petitioner claims in his reply brief to respondent's supplemental answer that he raised his claim involving trial counsel's ineffectiveness for failing to call James Siggers as a witness in his first post-conviction motion for relief from judgment. The Court, however, has reviewed the first post-conviction motion for relief from judgment filed by petitioner and there is nothing within this first motion to suggest that this claim was raised by petitioner. [1]

More importantly, petitioner clearly raised his fourth through eighth claims in his second motion for relief from judgment. Within the body of that motion, petitioner stated:

> "The current grounds raised have not been presented to this Court before and necessitate a review of the claims to exhaust state remedies before resubmitting the claims to the cited federal court on habeas review as has been mandated by United States District Judge

---

[1]  See Motion for Relief From Judgment [this Court's Dkt. # 32-4].

17

Marianne O. Battani." [2]

Indeed, this Court had noted in its opinion and order holding the habeas petition in abeyance that petitioner had not yet presented any of these claims to the Michigan courts.  This Court held the petition in abeyance on February 3, 2011, almost six months after the trial court had denied petitioner's first motion for relief from judgment.  Indeed, in the reply brief that he filed on January 3, 2011, petitioner acknowledged that only his first three claims had been exhausted with the state courts and did not claim that he had raised these claims in his first post-conviction motion. [3]  It thus appears that petitioner raised his fourth through eighth claims for the first time in his second post-conviction motion for relief from judgment.  Because M.C.R. 6.502(G) bars the filing of a second or successive motion for relief from judgment, petitioner's claims are procedurally defaulted.

In the present case, petitioner has offered no reasons for his procedural default.  While ineffective assistance of appellate counsel might excuse petitioner's failure to raise these claims on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust these claims in his first post-conviction motion. See Gadomski v. Renico, 258 Fed. Appx. 781, 784 (6th Cir. 2007); See also Carpenter v. Vaughn, 888 F. Supp. 635, 654 (M.D. Pa. 1994).  A

---

[2]  See Second Motion for Relief From Judgment, p. 9, ¶ 39 [this Court's Dkt. # 21].

[3]  See Reply Brief, p. 2 [Dkt. # 16].

habeas petitioner's *pro se* status and ignorance of rights at the state court level does not constitute cause which would excuse the procedural default. Hannah v. Conley, 49 F. 3d 1193, 1197 (6th Cir. 1995). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. Smith, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his fourth through eighth claims as a ground for a writ of habeas corpus in spite of the procedural default. Although petitioner claims that he has new evidence of his innocence in the form of an affidavit from James Siggers, Mr. Siggers' affidavit is insufficient evidence to establish petitioner's innocence so as to excuse his default. First, as an initial matter, this affidavit is not newly discovered evidence. Siggers' affidavit was signed and dated January 29, 2009, while petitioner's application for leave to appeal to the Michigan Supreme Court as part of his direct appeal was still pending. Petitioner has offered no reasons to this Court why he did not attempt to present this affidavit to the Michigan Supreme Court as part of his direct appeal, let alone present it in his first post-conviction motion.

More importantly, the facts contained in Siggers' affidavit are insufficient to establish that petitioner is factually innocent of the charges. Petitioner claims that Siggers would have impeached Officer Jason Kile's testimony concerning

19

the recovery of the handgun.  According to Siggers' affidavit, he did not see Officer Kile pursue and arrest petitioner.  Instead, Siggers claims that he only saw an unidentified police officer ask him to secure his dog and then witnessed this officer search his backyard and go into a backyard at 18677 Prest Street in Detroit, Michigan.  Officer Kile testified that he found the handgun at 18611 Prest Street, which is 131 feet away.  Because it is possible that Siggers was describing another officer, his proposed testimony would not have called into question Officer Kile's testimony.

At best, Siggers' testimony could have impeached Officer Kile's testimony. Impeachment evidence, however, does not provide sufficient evidence of actual innocence to excuse petitioner's default. See Calderon v. Thompson, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); Sawyer v. Whitley, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); See also Harris v. Stegall, 157 F. Supp. 2d 743, 750-51 (E.D. Mich. 2001)(State trial court's allegedly erroneous exclusion of victim's statements to police was insufficient to justify invoking fundamental miscarriage of justice exception to procedural default rule on federal habeas review when statements were merely impeaching and did not provide basis for any claim of actual innocence).  Because petitioner has not presented any new reliable evidence

20

that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review petitioner's fourth through eighth claims on the merits. See Johnson v. Smith, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his remaining claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. See Matthews v. Ishee, 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the respondent in their supplemental answer, none of petitioner's remaining claims have any merit. Accordingly, petitioner is not entitled to habeas relief on his procedurally defaulted claims.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [4] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects

---

[4] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. Id.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. See Millender v. Adams, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. See Foster

22

v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. Id.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal in forma pauperis

s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI**
**UNITED STATES DISTRICT JUDGE**

Dated: September 19, 2013

23

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, electronically.

<u>s/Bernadette M. Thebolt</u>
Case Manager